Gustavo Ponce, Esq.
Nevada Bar No. 15084
Mona Amini, Esq.
Nevada Bar No. 15381
**KAZEROUNI LAW GROUP, APC**
6069 South Fort Apache Road, Suite 100
Las Vegas, Nevada 89148
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
E-mail: gustavo@kazlg.com
       mona@kazlg.com

*Attorneys for Plaintiff,*
*Jennafer Aycock*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JENNAFER AYCOCK,<br><br>          **Plaintiff,**<br><br>vs.<br><br>AMERICAN EXPRESS NATIONAL BANK AND EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>          **Defendants.** | Case No.:<br><br>**COMPLAINT FOR VIOLATIONS OF VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, ET SEQ. (FCRA)**<br><br>**DEMAND FOR JURY TRIAL** |

//
//
//
//
//
//
//
//

**INTRODUCTION**

1. The United States Congress has found the banking system is dependent up-on fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), to ensure fair and accurate re-porting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. Plaintiff Jennafer Aycock ("Plaintiff"), through Plaintiff's attorneys, brings this action to challenge the actions of American Express National Bank ("AmEx") and Experian Information Solutions, Inc. ("Experian") (together, the "Defendants") as to erroneous reports of inaccurate and derogatory credit information to national reporting agencies, and for failure of Defendants to properly investigate, and this conduct caused Plaintiff damages.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. Defendants failed to properly investigate Plaintiff's disputes, and reported inaccurate credit information damaging Plaintiff's creditworthiness.

6. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendants took place in Clark County, State of Nevada.

8. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant named.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 et seq.; 28 U.S.C. §1331; *Smith v. Community Citibank, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

11. This action arises out of Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA")

12. Venue is proper for the following reasons: (i) Plaintiff resides in Clark County, which is within the judicial district; (ii) the conduct and harm complained of herein occurred within this judicial district; and (iii) Defendants conducted business within this judicial district at all times relevant.

# PARTIES

13. Plaintiff is a natural person residing in Clark County, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

14. Defendant AmEx is a commercial banking corporation doing business in the State of Nevada, with a principal place of business in New York.

15. Defendant AmEx is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

16. Defendant Experian is a national credit reporting agency, doing business in Nevada, with a principal place of business in California.

17. Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports and is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

18. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

# GENERAL ALLEGATIONS

19. At all times relevant, Plaintiff was an individual residing within the State of Nevada.

20. At all times relevant, Defendants conducted business in the State of Nevada.

21. Sometime prior to December 2014, Plaintiff's ex-boyfriend, Brandon Sattler ("Sattler"), stole Plaintiff's identity.

22. Sometime prior to December 2014, Plaintiff's ex-boyfriend, Brandon Sattler, stole Plaintiff's identity.

23. On or around December 8, 2014, Sattler, without Plaintiff's consent or knowledge, opened a credit card account in with AmEx with an account number ending in 2143 in Plaintiff's name (the AmEx Account") without Plaintiff's consent or knowledge.

24. In or around November of 2020, Plaintiff notified AmEx that the AmEx Account was an unauthorized and fraudulent account and requested that the AmEx Account be closed.

25. For about a year Plaintiff notified AmEx that the AmEx Account and other AmEx accounts were unauthorized and fraudulent and requested that the AmEx Account and all other accounts be closed.

26. In July 2021, Plaintiff discovered the AmEx Account was still being reported by AmEx on her Experian credit report despite having alerted AmEx and Experian that the AmEx Account was fraudulent and opened by an unauthorized party.

27. On October 27, 2021, AmEx sued Plaintiff in the Eighth Judicial District for Nevada (Case No. A-21-843248-C) (the "District Court Case") attempting to collect an alleged debt claimed to be owed on the AmEx Account—which later could not be concretely verified or tied to any AmEx account on Plaintiff's credit reports.

28. Plaintiff disputed the debt and the account referenced the District Court Case on numerous occasions to AmEx and its respective counsel in that matter to no avail.

29. Defendants reported, or caused to be reported, inaccurate information on Plaintiff's credit reports, including that the account was "past due" "charged off" with a balance due and other inaccurate and derogatory information, as detailed herein.

30. On September 21, 2022, AmEx filed a stipulation to dismiss the District Court Case without prejudice, thus closing the District Court Case.

31. On September 26, 2022, Plaintiff properly disputed Defendants' reporting of the AmEx Account, but Defendants failed to correct the inaccuracy and continued to report inaccurate information on Plaintiff's credit reports regarding the AmEx Account, as detailed herein.

32. In Plaintiff's September 26, 2022, dispute to Experian, Plaintiff included documents to support her assertions that her identity was stolen by her ex-boyfriend, Brandon Sattler, who Plaintiff believed opened the AmEx Account without her knowledge or consent.

33. These documents included a police report, an FTC Identity Theft Complaint and Affidavit, articles and lawsuits pertaining to Brandon Sattler in connection with his continuous fraudulent conduct, and a letter from AmEx closing and deleting another fraudulent account that had been opened and used by Brandon Sattler (account ending in 93017).

34. Presently, Defendants continue to report inaccurate information on Plaintiff's credit reports as detailed herein.

### AmEx and Experian Inaccurately Reported Credit Information
### Re: Account No. 3499921854712143

35. In an Experian credit report dated July 22, 2022, AmEx and Experian reported the following inaccurate and derogatory information regarding the AmEx Account:

    - Account Status: Charged off as of October 2021
    - Balance: $19,892.00 with $6,065.00 past due as of November 2022
    - In Collections: July 2021 to September 2021

36. AmEx and Experian should not have reported derogatory information on the AmEx Account on July 22, 2022, because Plaintiff had informed AmEx and Experian that the AmEx Account was a fraudulent and unauthorized account

opened by an unauthorized party and requested that the AmEx Account be closed in or around November 2020, as well as many other times thereafter.

37. On or about September 26, 2022, Plaintiff disputed AmEx and Experian's reporting regarding the AmEx Account pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished by AmEx.

38. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected.

39. Experian received Plaintiff's dispute on September 29, 2022.

40. To date, Plaintiff has not received a response to Plaintiff's dispute from Experian.

41. On information and belief, upon receiving the dispute letters, Experian timely notified AmEx of Plaintiff's dispute as required by 15 U.S.C. § 1681i(a)(2).

42. AmEx was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. 1681s-2(b).

43. Experian was required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

44. A reasonable investigation by AmEx and Experian would have indicated that Plaintiff's AmEx Account was a fraudulent and unauthorized account opened by an unauthorized party and did not belong to Plaintiff. A reasonable investigation by AmEx and Experian would have indicated that Plaintiff did not open the AmEx Account and therefore should not be on Plaintiff's credit report.

45. AmEx and Experian failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

46. AmEx and Experian continued to report the inaccurate derogatory information on Plaintiff's report.

47. Specifically, in an Experian credit report dated December 1, 2022, AmEx and Experian rereported the following inaccurate and derogatory information regarding the AmEx Account:

- Account Status: Charged off as of October 2021
- Balance: $19,892.00 with $6,065.00 past due as of November 2022
- In Collections: July 2021 to September 2021

48. This was inaccurate since the AmEx Account was a fraudulent and unauthorized account opened by an unauthorized party, and thus should not have been on Plaintiff's credit report. AmEx and Experian's rereporting of the AmEx Account on Plaintiff's credit report was, therefore, inaccurate.

49. Experian should not have reported the Account on Plaintiff's credit report because Plaintiff informed AmEx and Experian that the AmEx Account was a fraudulent and unauthorized account opened by an unauthorized party and requested the AmEx Account to be closed.

50. After receiving notice of Plaintiff's dispute, AmEx and Experian republished the inaccurate and derogatory information on the AmEx Account.

51. AmEx and Experian further failed to contact Plaintiff and request additional information from Plaintiff that would aid in reporting the correct status of the AmEx Account.

52. Therefore, AmEx and Experian upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A).

53. Plaintiff is informed and believes and here upon alleges that during the investigation of Plaintiff's dispute, prior to AmEx responding and verifying the incorrect information to the credit reporting agencies, AmEx failed to communicate with Experian to aid in reporting the correct status of the AmEx Account.

54. Plaintiff is informed and believes and here upon alleges that during the investigation of Plaintiff's dispute, prior to Defendant Experian responding and verifying the incorrect information to Plaintiff, Defendant Experian failed to communicate with AmEx to aid in reporting the correct status of the AmEx Account.

55. AmEx and Experian, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and 15 U.S.C. § 1681i.

56. AmEx and Experian failed to review all relevant information provided by Plaintiff in the disputes to Experian, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

57. Due to AmEx and Experian's failure to investigate, they each further failed to correct and update Plaintiff's information on the AmEx Account as required by 15 U.S.C. § 1681s-2(b)(1)(E), and 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and 15 U.S.C. § 1681i.

58. Plaintiff's continued efforts to correct AmEx and Experian's erroneous and negative information by disputing the reporting on the AmEx Account with AmEx and Experian were futile.

59. AmEx and Experian's continued inaccurate and negative reporting on the Account in light of its knowledge of the actual errors was willful.

60. AmEx and Experian's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

61. As a result of AmEx and Experian's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation, invasion of privacy, out-of-pocket expenses in challenging AmEx and Experian's inaccurate reporting, damage to her creditworthiness, emotional

distress and mental anguish as well as physical manifestations and injuries and harm.

62. By inaccurately reporting account information after notice and confirmation of their errors, AmEx and Experian failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and 15 U.S.C. § 1681i.

### *Inaccurate Credit Reporting and Reporting Standards*

63. Defendants' inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

64. The Consumer Data Industry Association ("CDIA") publishes Metro 2 to assist furnishers with their compliance requirements under the FCRA.

65. On information and belief, Defendants adopted and at all times relevant implemented Metro 2.

66. On information and belief, Defendants adopted Metro 2 and at all times relevant implemented Metro 2 as an integral aspect of their duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

67. Despite Metro 2's instructions, Defendants failed to conform to Metro 2 when reporting inaccurate information regarding Plaintiff's JPMorgan Account.

68. To this end, the adverse reporting on Plaintiff's reports departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

69. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

    i.  credit or insurance to be used primarily for personal, family, or household purposes;

    ii.  employment purposes; or

    iii.  any other purpose authorized under section 1681b.

70. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

71. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

72. The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports

73. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

74. Defendants' departures from the credit industry's own reporting standards and reporting inaccurate and derogatory information has caused Plaintiff to suffer damages from reduced FICO credit scores.

*Credit Scoring*

75. The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

76. The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

77. FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

78. Payment history is typically weighted as the most important aspect of a consumer's overall credit score because it shows how the consumer has managed their finances, including: any late payments, how long the consumer has been managing their accounts, when their last payments were made, and any recent charges. *See, e.g.,* https://www.transunion.com/credit-score.

79. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

80. Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

81. Here, inaccurately reporting the AmEx Account as open, with a balance owed, past due and/or delinquent when it was in fact a fraudulent and unauthorized account opened by an unauthorized party and requested to be closed in November 2020, as well as many other times thereafter, adversely affects Plaintiff's FICO score.

82. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is

dependent on the current score; i.e., a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

83. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/

### *Defendants' Failures and Plaintiff's Damages*

84. It is inaccurate to report an account as open and delinquent when it was in fact a fraudulent and unauthorized account opened by an unauthorized party and requested to be closed by the consumer.

85. Reporting that an account is still owed and delinquent detrimental to a consumer's credit reputation.

86. As evidenced by Defendants' failures to correct the reporting of the AmEx Account despite receiving accurate information from Plaintiff showing the AmEx Account was used by an unauthorized party and requested to be closed, Defendants each failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

87. As evidenced by the inaccurate re-reporting, Defendants each failed to conduct an investigation or reinvestigation upon receipt of Plaintiff's dispute with respect to the disputed information related to the AmEx Account as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

88. Defendants each failed to review all relevant information and documents provided by Plaintiff with her disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

89. Due to Defendants' failure to reasonably investigate, Defendants each further failed to correct and update Plaintiff's information as required by 15 U.S.C. §

1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

90. Defendants' continued inaccurate and derogatory reporting of the AmEx Account in light of their knowledge of the errors was knowing willful. Plaintiff is, accordingly, eligible for statutory damages.

91. Also as a result of Defendants' continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including, without limitation, invasion of privacy, fear of credit denials, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, and Plaintiff has suffered loss of personal time and worry, fear, stress, anxiety, and sleeplessness.

92. Creating the false impression of the AmEx Account as open and having a delinquency creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's credit reports engaged in judgment-based lending.

93. The adverse effect on Plaintiff's credit score places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than she otherwise would.

94. The inaccurate information negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor, and Plaintiff's credit worthiness.

95. By inaccurately reporting account information after notice from Plaintiff, Defendants each failed to take the appropriate measures in violation of the FCRA and as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

///

///

# CAUSE OF ACTION

## Violations of the Fair Credit Reporting Act

## 15 U.S.C. §§ 1681 *et seq*. (FCRA)

96. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

97. The foregoing acts and omissions of each Defendant constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C § 1681.

98. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each of the Defendants.

99. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from each of the Defendants.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

- An award of actual damages against each of the Defendants pursuant to 15 U.S.C. § 1681n(a)(1);

- An award of statutory damages against each of the Defendants pursuant to 15 U.S.C. § 1681n(a)(1);

- An award of punitive damages against each of the Defendants as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- An award of costs of litigation and reasonable attorney's fees against each of the Defendants, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) for each incident of negligent noncompliance of the FCRA; and

- Any other relief the Court may deem just and proper.

### TRIAL BY JURY

100. Plaintiff is entitled to, and demands, a trial by jury on all issues so triable.

DATED this 24th day of February 2023.

    Respectfully submitted,

    **KAZEROUNI LAW GROUP, APC**

    By: */s/ Gustavo Ponce*
    Gustavo Ponce, Esq.
    Mona Amini, Esq.
    6069 S. Fort Apache Rd., Ste 100
    Las Vegas, NV 89148
    *Attorneys for Plaintiff Jennafer Aycock*